Buchanan
Ingersoll·Rooney

**Stuart P. Slotnick**
212 440 4435
stuart.slotnick@bipc.com

640 Fifth Avenue
9th Floor
New York, NY 10019-6102
T 212 440 4400
F 212 440 4401

September 1, 2026

**VIA ECF**
Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square, Courtroom 1106
New York, New York 10007

**Re:** ***Nerdeen Mohsen (a.k.a. Nerdeen Kiswani) v. Betar Zionist Organization, Inc., et al.***
**Case No. 1:26-cv-01585-LGS**

Dear Judge Schofield:

Pursuant to the Court's August 20, 2026 directive (ECF 61), counsel for Defendants Ronn Torossian ("Torossian"), Betar Zionist Organization, Inc. ("BZO"), and Jon I. Mantell ("Mantell") (collectively "Defendants") submit this letter setting forth Defendants' anticipated non-party discovery and their position concerning categories of non-party discovery proposed by Plaintiff.

## I. Defendants' Position Concerning Non-Party Discovery

Defendants anticipate seeking limited discovery from non-parties pursuant to Federal Rules of Civil Procedure 45 and 34(c). The proposed discovery is directed principally to evidence not reasonably available from the parties and bearing on the alleged conspiracy and attribution of Defendants' asserted motive, causation, and damages. Defendants intend to tailor any subpoena to the relevant custodian, incident, time period, and category of information.

### A. Claims, Defenses, and Disputes

Plaintiff asserts claims pursuant to 42 U.S.C. §§ 1985(3) and 1986. In substance, she alleges that BZO, Torossian, and Mantell conspired with others to intimidate her because of her "Palestinian nationality, Arab ethnicity, and Muslim faith" thereby interfering with rights she contends are protected by federal law. Compl. at ¶¶ 3, 6-7. Defendants deny discriminatory motive and contend that any speech or protest directed at Plaintiff was responsive to her public advocacy and political activity, including statements Defendants understood as endorsing violence against Israel or Zionists, including agreement with the October 7th Hamas terrorist

attacks, rather than any protected status. Targeted discovery concerning the public statements and activities that Defendants contend supplied the context and motive for their own speech is therefore relevant.

Defendants also contend that this action seeks at least in part, to suppress Defendants' speech and protest with which Plaintiff disagrees and may seek non-party discovery about any organizational sponsor that also seeks to limit Defendants' speech.

Defendants also anticipate targeted non-party discovery concerning Plaintiff's claimed damages, including alleged restrictions on travel or public participation, emotional distress, lost income, and security or travel expenses. Any such discovery will be tied to the categories of damages Plaintiff pursues and, where practicable, will be propounded after Plaintiff identifies the relevant provider, transaction, event, or time period in party discovery.

**B. Categories of Proposed Non-Party Discovery**

1. Plaintiff's Travel Records: Defendants anticipate targeted subpoenas to specific transportation providers, event organizers, or venues after Plaintiff identifies travel or events she claims were canceled, altered, or made more costly because of Defendants. As such, Defendants may seek permission to subpoena the venues Plaintiff attended for documents sufficient to establish whether Plaintiff planned to attend, whether and when she canceled or changed her participation, the reason communicated for that decision, and any relevant security or logistical circumstances. Such subpoenas would seek documents sufficient to confirm the travel or event, the timing and amount of any claimed expense, whether Plaintiff canceled or changed her participation, and any reason communicated for that decision. Defendants may also seek targeted records which demonstrate Plaintiffs' daily travel and presence in certain locations to address her claims that she was limited as a result of Defendants' conduct.

2. Plaintiff's Security, Escort or Protective Services: Defendants anticipate seeking targeted discovery from any security, or protective-services provider Plaintiff identifies as retained or used because of the conduct alleged in the Complaint.

3. Plaintiff's Medical/Mental Health-Related Records: To the extent Plaintiff seeks treatment-based or other non-garden-variety emotional or physical injury damages, Defendants will seek appropriately limited discovery from identified health-care providers concerning the condition placed at issue, treatment allegedly attributable to Defendants' conduct, causation, and claimed expense. Defendants do not seek blanket lifetime medical or mental-health records. Defendants reserve their rights to seek a mental health evaluation of Plaintiff to determine the extent of any emotional distress and the source of any alleged emotional distress.

4. Social Media and Messaging Platforms: Defendants anticipate seeking relevant content in the first instance from Plaintiff and WOL through ordinary discovery. Any subpoena directed to social-media or messaging providers will be limited to information the provider may lawfully disclose in response to civil process. It will also demonstrate the speech that Defendants, as may be applicable, found offensive and subsequently protested. As just an example of Plaintiff's inciteful messaging, Plaintiff stated "I hope that POP POP is the last noise that some Zionists hear in their lifetime." Plaintiff posted on social media, "We don't want Zionists in Palestine, NYC, our schools, on the train, ANYWHERE. This is free speech…" As well as "Israel will be wiped of the map inshallah", meaning 'god-willing'.

To the extent Plaintiff makes a claim for continuing emotional distress, security costs, or restrictions on her activities, evidence concerning other threats or safety concerns unrelated to Defendants may bear on causation and the allocation of claimed damages, Defendants may seek discovery from other web-based sourced as to threats directed to Plaintiff or Plaintiff's response to her perceived adversaries, all of which bear upon Plaintiff's damages claims.

5. Financial Records, Payment, and Fundraising: To the extent Plaintiff claims lost wages or a diminishment in income, speaking fees, professional opportunities, or other lost earnings as a result of Defendants' conduct, Defendants may seek targeted records from the relevant employer, client, payor, provider, or other custodian sufficient to verity the claimed loss or expenditure. Defendants will also seek the source of counsel fees paid by or on behalf of Plaintiff.

6. Custodians for the Specific Physical Encounters: Defendants seek narrowly tailored subpoenas to venue or security custodians for the principal physical encounters alleged in the Complaint, including: (i) the appropriate Pershing Square / Grand Central Partnership custodian for the September 26, 2024 encounter; (ii) the appropriate NYU / NYU Langone public-safety or property custodian for the January 6, 2025 encounter; and (iii) the appropriate Rockefeller Center security/property custodian for the January 18, 2025 encounter. The subpoenas would seek only existing or preserved video, photographs, incident/security reports, relevant security logs, communications concerning the specific demonstration or incident, and identification of personnel with firsthand knowledge, for appropriately limited time periods.

7. Plaintiff's Witnesses to Alleged Harassment and Plaintiff's Wellbeing: Plaintiff identified the following individuals in her Rule 26(a) disclosures:

a. Feras Deek,
b. Dan Cione,
c. Deena Mohsen,
d. Jess Natale,

e. Jalal Alfaqih,
f. Habiba Ali,
g. Andrew Firestone,
h. Aatika Harchane, and
i. Fatima Youssef.

Defendants may seek targeted documents or testimony from those disclosed non-party witnesses who have firsthand knowledge of specific alleged incidents and others that are disclosed during party and non-party discovery.

8. Within Our Lifetime (WOL): Plaintiff founded and leads WOL and the Complaint places WOL-organized events at the center of several alleged incidents. To the extent Plaintiff does not produce responsive WOL materials within her possession, custody, or control, Defendants anticipate a targeted subpoena to WOL for communications concerning the pleaded incidents, identification of witnesses or alleged co-conspirators A-D, event and security planning, relevant third-party threats and travel or security expenditures attributed to Defendants or other perceived threats.

9. Media Outlets: Plaintiff's public statements ordinarily can be obtained from public sources, however Defendants would seek third-party discovery from media outlets if a specific outlet possesses unique, nonprivileged material relevant to a disputed fact or claimed damages that cannot reasonably be obtained from Plaintiff, WOL, or public sources.

10. Law Enforcement Agencies: Defendant intends to subpoena law enforcement agencies including but not limited to the NYPD. This discovery is directly related to Plaintiff's claims she was stalked, harassed, and threatened. As stated above, Plaintiff has claimed in her media campaign that she has been the target of violent threats, unrelated to Defendants, and subject to protests for over 10 years (long before an of the complained of alleged conduct by Defendants). Whether or not Plaintiff made any reports to these agencies directly bears on her core allegations. Additionally, Plaintiff has been arrested before relating to her protesting—the same conduct she complains of with respect to Defendants.

11. The New York Attorney General's Office: To the extent Plaintiff seeks the complete investigative file underlying the Assurance of Discontinuance, Defendants submit that such a request is overbroad and disproportionate. Paragraph 45 of the Assurance states that it "is not intended for use by any third party in any other proceeding," and paragraph 46 states that it is not intended, and should not be construed, as an admission of liability by BZO. Those provisions do not categorically bar discovery of otherwise relevant underlying materials, but they counsel against treating the Assurance itself as an admission or using it as a basis for wholesale discovery of the OAG's investigative file. Any OAG discovery should be limited to nonprivileged materials concerning Plaintiff, WOL, or the specific incidents alleged here and should account for applicable governmental privileges and burden.

12. United States Executive Agency Officers and Employees: Plaintiff has identified, among others, Peter Hatch of ICE's Homeland Security Investigations component based on testimony in *AAUP v. Rubio*, No. 25-cv-10685 (D. Mass.). The cited testimony is already publicly available. Defendants submit that broad document or deposition discovery from federal officers concerning governmental investigations and alleged communications between Defendants and the U.S. government would be disproportionate absent identification of particular nonpublic information that bears on a claim or defense and cannot reasonably be obtained from the existing transcript or party discovery. Any such discovery should be limited to that identified, nonprivileged information.

**A. Legal Standard**

Applicable Law: Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevance is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case *DoorDash, Inc. v. City of New York*, 754 F. Supp. 3d 556 (S.D.N.Y. 2024).

In this case, appropriately tailored non-party discovery may bear on whether the alleged conspiracy or agreement existed, whether particular conduct is properly attributable to any Defendant, the motive for the challenged conduct, whether any Defendant had the knowledge and ability required by § 1986, and whether the alleged conduct caused the injuries and damages Plaintiff claims.

Proportionality Analysis: All non-party subpoenas are subject to the proportionality requirements of FRCP 26(b)(1). The six proportionality factors are: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

- **Importance of the Issues** – The non-party discovery proposed by Defendant is directed to objective records and firsthand witnesses concerning the specific encounters, alleged coordination, and damages placed at issue by the Complaint and is of vital importance.

- **Amount in Controversy** – The non-party discovery sought herein with respect to damages is highly relevant in light of Defendants' defense of *de minimis* or zero damages.

- **Relative Access to Information** – For Social Media platforms, financial institutions, and travel-related entities, documents and information in their custody is necessary to authenticate records and avoid any question as to authoring of communications and to whom was the beneficiary of travel and transactions and those records reside primarily

with the non-parties, necessitating non-party subpoenas. For the individuals who are alleged to have witnessed Plaintiff's harassment and "wellbeing" that evidence obviously lies solely in their custody.

- **Importance in Resolving the Issues** – Except for known central witnesses and neutral custodians, Defendants intend where practicable to use Plaintiff's discovery responses to identify the specific non-party custodian and scope before serving a subpoena. Non-party authenticated business records are central to resolving the issues including damages and Plaintiff's conduct.

- **Proportionality of the burden** – The requests will be narrowly tailored and specific in scope by custodian, time period, category, and consistent with FRCP 45 with respect to undue burden and with the parties' ESI Agreement (ECF 62) and Protective Order (ECF 38).

**B. <u>Timeliness</u>**

The proposed non-party discovery described in this letter is consistent with the existing discovery schedule extended by the Court on August 26, 2026 (ECF 66-67). The initial Civil Case Management Plan and Scheduling Order contemplated non-party subpoenas (ECF 30), and Defendant intends to serve subpoenas and conduct any necessary non-party depositions in sufficient time to complete fact discovery by the current January 14, 2027 deadline.

Respectfully,
*<u>/s/ Stuart Slotnick</u>*
Stuart P. Slotnick

cc: Counsel of Record (*via ECF*)